# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS STABILE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>II-VI INCORPORATED, VINCENT D. MATTERA, JR., MARY JANE RAYMOND, FRANCIS J. KRAMER, JOSEPH J. CORASANTI, ENRICO DIGIROLAMO, MARC Y. E. PELAEZ, SHAKER SADASIVAM, WILLIAM SCHROMM and HOWARD H. XIA,<br><br>Defendants. | Case No.  1:19cv62<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Electronically Filed** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action arises from material misstatements and/or omissions in proxy communications to be made to II-VI Incorporated ("II-VI" or the "Company") shareholders with respect to II-VI's proposed issuance of common stock (the "Issuance") and the Company's related acquisition of Finisar Corporation ("Finisar") (the "Merger" or the "Proposed Transaction").

2. On November 9, 2018, II-VI and Finisar entered into a merger agreement (the "Merger Agreement") pursuant to which II-VI will acquire all of the outstanding shares of Finisar in a cash and stock transaction with an equity value of approximately $3.2 billion.

1

3. Under the Merger Agreement, each outstanding share of Finisar common stock will be converted into the right to receive, subject to proration (such that the aggregate merger consideration will consist of approximately 60% cash and approximately 40% II-VI common stock): (i) $26.00 in cash (the "Cash Election"); (ii) 0.5546 shares of II-VI common stock (the "Stock Election"); or (iii) a combination of $15.60 in cash and 0.2218 shares of II-VI common stock (the "Mixed Election").

4. Because II-VI will issue additional shares totaling more than 20% of its current outstanding common stock, and because applicable stock exchange rules require an issuer, such as II-VI, to obtain shareholder approval before such issuances, the Merger Agreement provides that the approval of II-VI's shareholders is a necessary condition to closing the Merger.

5. II-VI intends to fund the cash portion of the merger consideration with a combination of cash on hand from the combined companies' balance sheets and $2 billion in new debt financing.

6. On December 28, 2018, II-VI filed with the U.S. Securities and Exchange Commission (the "SEC") a Registration Statement on Form S-4 (the "Registration Statement"), which also serves as a draft of the proxy statement to be sent to II-VI's shareholders to solicit their votes in favor of the Issuance.[1] According to the Registration Statement, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch") served as II-VI's exclusive financial advisor in connection with the Merger, and provided the II-VI Board of Directors (the "II-VI Board") with an opinion that the Merger and Issuance are purportedly fair, from a financial point of view.

---

[1] II-VI filed Amendment No. 1 to the Registration Statement on January 18, 2019.

2

7. The Registration Statement reports that II-VI agreed to pay BofA Merrill Lynch an advisory fee of $29 million, of which $27 million – or over 93% – is contingent upon the Merger's consummation.

8. The Registration Statement also provides that, in addition to its advisory work, BofA Merrill Lynch (through an affiliate) is also serving as the left lead arranger and a lender for debt financing of up to $2.425 billion in aggregate principal amount of senior secured credit facilities of II-VI comprised of (i) a "term a" loan facility of up to $1.0 billion, (ii) a "term b" loan facility of up to $975.0 million, and (iii) a revolving credit facility of up to $450.0 million (collectively, the "Financing"). II-VI intends to use the Financing, in large part, to finance the Merger.

9. Yet, the Registration Statement fails to disclose the amount of financing fees that BofA Merrill Lynch will receive for serving as the left lead arranger and a lender for the Financing. This omitted information is patently material because it is imperative for II-VI shareholders to be able to understand what factors might have influenced BofA Merrill Lynch's analytical efforts in providing a fairness opinion on the Merger and accompanying Issuance. To be sure, because BofA Merrill Lynch is serving as lead arranger on the Financing and will receive fees based on the amounts loaned, BofA Merrill Lynch had a powerful incentive to advise II-VI to maximize the cash portion of the merger consideration, which in turn would maximize the fees payable to BofA Merrill Lynch for arranging the Financing. II-VI shareholders voting on the Issuance would find this information concerning BofA Merrill Lynch's conflicts of interest material in determining how to vote.

10. As a result of omitting this material information, the Registration Statement is false and misleading, and violates Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act").

## JURISDICTION AND VENUE

11. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

12. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

14. Plaintiff Thomas Stabile is a stockholder of II-VI and has owned II-VI common stock at all material times alleged in this Complaint.

15. Defendant II-VI is a Pennsylvania corporation that maintains its principal headquarters at 375 Saxonburg Boulevard, Saxonburg, Pennsylvania 16056.

16. Defendant Vincent D. Mattera, Jr. is II-VI's President and Chief Executive Officer ("CEO"), and has served as a director of II-VI since 2012.

17. Defendant Mary Jane Raymond is II-VI's Chief Financial Officer and Treasurer.

18. Defendant Francis J. Kramer is the Chairman of II-VI's Board of Directors, and has served as a director of II-VI 1989.

4

19. Defendant Joseph J. Corasanti has served as a director of II-VI since 2002.

20. Defendant Enrico Digirolamo has served as a director of II-VI since 2018.

21. Defendant Marc Y. E. Pelaez has served as a director of II-VI since 2002.

22. Defendant Shaker Sadasivam has served as a director of II-VI since 2016.

23. Defendant William Schromm has served as a director of II-VI since 2015.

24. Defendant Howard H. Xia has served as a director of II-VI since 2011.

25. The defendants identified in ¶¶ 16 – 24 signed the Registration Statement and are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

26. II-VI is a global leader in engineered materials and optoelectronic components, and is a vertically integrated manufacturing company that develops innovative products for diversified applications in the industrial, optical communications, military, life sciences, semiconductor equipment, and consumer markets. II-VI's common stock is listed on the Nasdaq Global Select Market under the symbol "IIVI."

27. Finisar is a global technology leader in optical communications, providing components and subsystems to networking equipment manufacturers, data center operators, telecom service providers, consumer electronics and automotive companies. Finisar's common stock is listed on the Nasdaq Global Select Market under the symbol "FNSR."

28. According to the Registration Statement, "during the course of 2017 II-VI management identified Finisar to the II-VI Board as one of the companies that had products and technologies that were complementary to those of II-VI and which potentially could represent an opportunity for II-VI to rapidly accelerate its growth into new markets that will require new capabilities and potentially reduce costs."

29.     On August 19, 2017, the Registration Statement reports that the II-VI Board held a meeting, which included participation from BofA Merrill Lynch. During that meeting "the II-VI Board, together with II-VI management, reviewed the current mergers and acquisitions strategy for II-VI, including a number of potential acquisition or combination candidates, such as Finisar."

30.     On September 11, 2017, according to the Registration Statement, the II-VI Board held a telephonic special meeting, which included participation from representatives of BofA Merrill Lynch. During that meeting II-VI management, representatives of BofA Merrill Lynch, and counsel gave a presentation to the II-VI Board regarding Finisar as a potential strategic combination opportunity. After discussion, the II-VI Board directed Dr. Mattera (II-VI's President, CEO and a director) to contact Finisar to determine if Finisar would be interested in exploring a potential strategic transaction between the two companies.

### II-VI Negotiates the Merger with Finisar

31.     The Registration Statement reports that representatives of II-VI and Finisar began discussions towards a possible combination of the two companies in October 2017.

32.     These discussions waned until April 2018, when, according to the Registration Statement, "at the direction of II-VI, a representative of BofA Merrill Lynch called Mr. Robert N. Stephens, the Chairman of the Finisar Board, to express the ongoing interest of II-VI's management in exploring a potential combination of the two companies. On that call, it was agreed that Dr. Mattera and Mr. Hurlston [Finisar's CEO] would meet in person." Further according to the Registration Statement, that meeting occurred three days later, on April 20, 2018, during which "Mr. Hurlston indicated that the Finisar Board would be willing to receive a proposal from II-VI regarding a potential combination of the two companies."

6

33. On April 27, 2018, the II-VI Board held a special telephonic meeting to discuss a potential combination with Finisar. During that meeting, "BofA Merrill Lynch also provided a presentation regarding the potential for II-VI to acquire Finisar in a cash and stock transaction instead of pursuing an all equity, merger of equals transaction."

34. On May 2, 2018, the II-VI Board held a special telephonic meeting to discuss the potential acquisition of Finisar. According to the Registration Statement, during that meeting representatives of BofA Merrill Lynch "provided an overview of potential structures, financing, and pricing for an acquisition of Finisar." Also during that meeting, the II-VI Board reportedly authorized II-VI management to propose a transaction whereby II-VI would acquire Finisar at an indicative value of $22.00 to $23.00 per share of Finisar common stock in a cash and stock transaction. That proposal was presented to Finisar the following day (the "May 3 Proposal"), and it "indicated that financing of the cash component of the consideration would be pursuant to committed debt financing arranged through BofA Merrill Lynch, and indicated that the proposal was subject to customary due diligence."

35. On June 13, 2018, according to the Registration Statement, the Finisar Board instructed Mr. Stephens to convey to II-VI that the May 3 Proposal had too low of a purchase price, but not to counter the May 3 Proposal.

36. The Registration Statement reports that, on June 26, 2018, Mr. Stephens (Finisar's Chairman) "discussed with representatives of BofA Merrill Lynch potential synergies regarding a business combination between Finisar and II-VI and the desire of II-VI to continue discussions with Finisar regarding a business combination." Later that same day, "Mr. Stephens and representatives of BofA Merrill Lynch further discussed scheduling a call with Dr. Mattera regarding a potential business combination between Finisar and II-VI."

7

37. On July 6, 2018, according to the Registration Statement, Mr. Stephens and Dr. Mattera discussed the strategic rationale for a combination of Finisar and II-VI, and also discussed holding a subsequent meeting to further discuss a potential business combination between Finisar and II-VI. Later that same day, Mr. Stephens and a representative of BofA Merrill Lynch also discussed the strategic rationale for a combination of Finisar and II-VI.

38. The Registration Statement reports that on August 3, 2018, the Finisar Board instructed its financial advisor, Barclays, to respond to II-VI's May 3, 2018 Proposal by rejecting the proposal as financially inadequate, and to propose a counter price range of $26.00 to $29.00 per share of Finisar common stock to II-VI. Barclays communicated that proposal to BofA Merrill Lynch, II-VI's financial advisor, the following day (the "August 4 Proposal").

39. On August 13, 2018, the II-VI Board held a special telephonic meeting, which included participation from BofA Merrill Lynch. The Registration Statement reports that during that meeting "representatives of BofA Merrill Lynch provided an overview of the August 4 communication from Finisar regarding the increased price range and gave a presentation regarding the results of that price range on various financial metrics of II-VI." Ultimately, the II-VI Board concluded that additional diligence information was required before proceeding with further discussions about an increase in price.

40. On September 11, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. According to the Registration Statement, during that meeting the II-VI Board approved an increase of the proposed price range to $24.50 to $26.00 per share of Finisar Common Stock. This revised proposal was communicated by BofA Merrill Lynch to Finisar's financial advisor on September 14, 2018 (the "September 14 Proposal").

8

41. On September 21, 2018, the Finisar Board met to consider II-VI's September 14, 2018 Proposal. According to the Registration Statement, after discussion the Finisar Board instructed Mr. Stephens to provide a counter-proposal to II-VI of $27.50 per share of Finisar common stock.

42. On September 26, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. According to the Registration Statement, during that meeting "[r]epresentatives of BofA Merrill Lynch provided an updated financial analysis with respect to the proposed transaction," and the II-VI Board "approved proposing an offer price of $26.00 per share of Finisar common stock, with cash comprising approximately 60% of the total consideration and the balance in shares of II-VI common stock" (the "September 26 Proposal"). The September 26 Proposal was communicated by BofA Merrill Lynch to Finisar's financial advisor that same day.

43. The following day, according to the Registration Statement, the Finisar board communicated to II-VI that it was prepared to move forward with a potential transaction with II-VI with a price of $26.00 per share of Finisar common stock, but with additional proposals, conditions and requests concerning the proposed business combination.

44. On October 16, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. At that meeting, according to the Registration Statement, "representatives of II-VI management and BofA Merrill Lynch provided an update of the synergies analysis, and representatives of BofA Merrill Lynch provided an overview of the anticipated terms of the debt financing for the transaction."

45. On October 26, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. During that meeting,

9

according to the Registration Statement, "representatives of BofA Merrill Lynch provided an updated financial analysis of Finisar and an update of the proposed terms and details of the anticipated debt financing." Also during the October 26, 2018 meeting, the II-VI Board "discussed at length the transaction issues and the anticipated negotiating strategy in light of the recent decline in the market price of both Finisar's and II-VI's common shares," and "authorized management of II-VI and BofA Merrill Lynch to communicate to Finisar a proposal consisting of $15.60 in cash and a fixed exchange rate of 0.2129 shares of II-VI Common Stock per share of Finisar Common Stock" (the "October 26 Proposal").

46. On October 30, 2018, the Finisar Board met to discuss possible responses to II-VI's October 26 Proposal. According to the Registration Statement, at that meeting the Finisar Board instructed representatives of Barclays to respond to II-VI's October 26 Proposal with a proposed exchange ratio for the stock consideration that would be based on an average share price for a number of trading days prior to the closing of the Merger, subject to an overall collar (the "Exchange Ratio Proposal"). The following day Barclays communicated Finisar's counterproposal to BofA Merrill Lynch, including the Exchange Ratio Proposal and a list of key outstanding points in the draft merger agreement (the "October 31 Response").

47. On November 1, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. According to the Registration Statement, during that meeting "members of II-VI management and representatives of BofA Merrill Lynch provided a review of the Exchange Ratio Proposal," and the II-VI Board approved accepting the Exchange Ratio Proposal.

48. On November 6, 2018, the II-VI Board held a special telephonic meeting, which included participation from II-VI management and BofA Merrill Lynch. The Registration

Statement reports that during that meeting "representatives of BofA Merrill Lynch provided an update on the proposed terms and details of the anticipated debt financing," and the II-VI Board recommended that II-VI management continue to move forward to complete the negotiation of the terms of the merger.

49. On November 8, 2018, the II-VI Board held a regular, in-person meeting, together with members of II-VI management, counsel, and BofA Merrill Lynch. According to the Registration Statement:

> At the meeting, representatives of BofA Merrill Lynch provided an overview of the final materials terms of the proposed debt financing for the transaction. … Representatives of BofA Merrill Lynch then provided a review of the valuation issues regarding Finisar and II-VI. They also provided the II-VI Board an updated summary of information regarding work that BofA Merrill Lynch has previously performed, and fees received, for both II-VI and Finisar. BofA Merrill Lynch then reviewed with II-VI's board of directors its financial analysis of the Merger Consideration and delivered to II-VI's board of directors an oral opinion, which was confirmed by delivery of a written opinion dated November 8, 2018, to the effect that, as of that date and based on and subject to various assumptions and limitations described in its opinion, the Merger Consideration to be paid by II-VI in the Merger, was fair, from a financial point of view, to II-VI.

50. The Registration Statement further reports that, following BofA Merrill Lynch's financial analysis and delivery of its financial opinion to the II-VI Board, on November 8, 2018, the II-VI Board unanimously voted:

> (i) to determine that the terms of the Merger Agreement and the Merger were fair to, and in the best interest of, II-VI and its shareholders, (ii) to approve and declare advisable the Merger Agreement and the transactions contemplated thereby, including the Merger, (iii) recommend that the shareholders of II-VI approve the issuance of the shares of II-VI Common Stock called for pursuant to the Merger Agreement, (iv) to authorize management of II-VI to enter into the commitment letters for the debt financing, and (v) to authorize management of II-VI to take the various actions necessary to consummate the Merger, among other items.

51. Finally, the Registration Statement reports that prior to the opening of the financial markets on November 9, 2018, II-VI and Finisar entered into the Merger Agreement. Under the

11

Merger Agreement, each outstanding share of Finisar common stock will be converted into the right to receive, subject to proration (such that the aggregate merger consideration will consist of approximately 60% cash and approximately 40% II-VI common stock): (i) $26.00 in cash; (ii) 0.5546 shares of II-VI common stock; or (iii) a combination of $15.60 in cash and 0.2218 shares of II-VI common stock.

52. Also on November 9, 2018, II-VI issued a press release publicly announcing that it would buy Finisar in a transaction with an equity value of approximately $3.2 billion in cash and stock. Following that announcement, shares of II-VI's common stock tumbled approximately 19% percent in value.

***BofA Merrill Lynch's Dual Incentive for II-VI to Acquire Finisar***

53. In connection with the Merger, II-VI agreed to pay BofA Merrill Lynch for its advisory services an aggregate fee of $29 million, of which $27 million – or over 93% – is contingent upon consummation of the Merger. That $27 million contingency fee was not, however, BofA Merrill Lynch's only motivation for advising the II-VI Board to pursue an expensive acquisition of Finisar. Rather, BofA Merrill Lynch (through its affiliate, Bank of America, N.A.) also stands to earn a "significant" undisclosed sum for providing financing to II-VI for the Merger.

54. II-VI anticipates funding the cash element of the Merger Consideration with a combination of cash on hand from the combined companies' balance sheets and approximately $2 billion in debt financing, and the Registration Statement reports that "II-VI will incur significant costs with respect to the financing for the cash consideration to be paid in connection with the Merger."

55. In connection with the Merger, II-VI entered into a commitment letter with BofA Merrill Lynch's affiliate, dated November 8, 2018 (and amended on December 7, 2018 and December 14, 2018), pursuant to which Bank of America, N.A. (and subsequently, additional lenders) committed to provide II-VI **up to $2.425 billion** in senior secured credit facilities comprised of (i) a "term a" loan facility of up to $1.0 billion, (ii) a "term b" loan facility of up to $975 million and (iii) a revolving credit facility of up to $450 million (collectively, previously defined as the "Financing"). BofA Merrill Lynch acknowledges that it will receive fees for its services in connection with the Financing, and discloses in its November 8, 2018 fairness opinion to the II-VI Board that:

> We and certain of our affiliates also are participating in the financing for the Merger, for which services *we and our affiliates will receive significant compensation contingent on the consummation of the Merger*, including acting as left lead arranger and administrative agent in connection with the $2,425 million underwritten credit facility comprising a portion of such financing. (Emphasis added)

56. BofA Merrill Lynch's fairness opinion does not describe the nature or magnitude of the fees that BofA Merrill Lynch or its affiliates expect to earn through "participating in the financing for the Merger," other than to represent that such compensation will be "significant."

### *II-VI Issues the Materially Deficient Registration Statement and Joint Proxy*

57. In the Issuance, II-VI will issue a number of shares of its common stock exceeding 20% of II-VI's currently outstanding common stock to Finisar shareholders as Merger consideration. Under the applicable listing rules, II-VI is required to obtain its shareholders' approval of the Issuance. Accordingly, II-VI will hold a special meeting of its shareholders (at a to-be-determined date) to vote on the Issuance (the "Special Meeting"). Approval of the Issuance requires the affirmative vote of a majority of the votes cast by holders of II-VI's common stock,

13

and as detailed in the Registration Statement, "II-VI cannot complete the Merger unless, among other things, the II-VI shareholders approve the [Issuance]."

58. On December 28, 2018, in connection with soliciting II-VI shareholders' support for the Issuance at the Special Meeting, II-VI filed with the SEC the Registration Statement, which also serves as a joint proxy statement for the solicitation of shareholder votes by both II-VI and Finisar. The Registration Statement fails to disclose BofA Merrill Lynch's compensation for serving as the left lead arranger and a lender under the Financing. BofA Merrill Lynch's financing-related fees may well exceed BofA Merrill Lynch's $29 million advisory fee for its work on the Merger.

59. The omission of the nature and extent of BofA Merrill Lynch's financing fees, and thus total compensation in connection with the Merger, is material to II-VI shareholders in deciding whether to approve the Issuance. As explained above, BofA Merrill Lynch assisted II-VI in negotiating the Merger and provided an opinion to the Board regarding the Merger consideration and Issuance's purported financial fairness. Thus, BofA Merrill Lynch's incentive to see the Merger consummated frames its credibility as an adviser to II-VI with respect to the Merger and the related Issuance.

60. Moreover, because investment banker fees for arranging debt financing are typically driven by the amount of the loan for which the bank arranged, BofA Merrill Lynch had a financial incentive to advise II-VI to pay more in cash as Merger consideration for Finisar so that II-VI would have to borrow more money from BofA Merrill Lynch to finance the Merger, and consequently to pay more financing fees to BofA Merrill Lynch for the Financing.

61. The omission of the nature and extent of BofA Merrill Lynch's financing-related fees, and therefore total fees payable by II-VI to BofA Merrill Lynch in connection with the

14

Merger, is particularly material to II-VI shareholders in this instance because BofA Merrill Lynch served as II-VI's sole and exclusive financial advisor in connection with the Merger and the related Issuance.

62. In order to fairly assess the Issuance and decide how to vote on it, and to assess whether to rely on BofA Merrill Lynch's fairness opinion in casting that vote, II-VI shareholders, such as Plaintiff, are entitled to know all material information concerning BofA Merrill Lynch's conflicts of interests. Without this material information, II-VI shareholders will be unable to cast an informed vote on the Issuance.

63. Further, this omitted information is material to investors as it may have directly impacted the motivations of BofA Merrill Lynch in connection with its role as the sole and exclusive financial advisor to II-VI, and it is imperative for II-VI stockholders to be able to understand what factors might have influenced BofA Merrill Lynch's analytical efforts in providing its fairness opinion on the Proposed Transaction to stockholders.

64. The omission of this material information from the Registration Statement thus renders the Registration Statement false and misleading.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

65. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of II-VI (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

66. This action is properly maintainable as a class action.

67. The Class is so numerous that joinder of all members is impracticable. According to public filings, as of November 2, 2018, there were 63,582,797 shares of II-VI common stock

outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

68.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm Plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

69.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

70.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

71.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## COUNT I

**Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder
Against the Individual Defendants and II-VI**

72.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

73.     SEC Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the

16

circumstances under which it is made, is false or misleading as to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

74. The Registration Statement violates § 14(a) of the Exchange Act and SEC Rule 14a-9 because the Individual Defendants omitted material facts necessary to make the Registration Statement not false and misleading, specifically, material facts regarding BofA Merrill Lynch's total compensation in connection with the Merger and the Issuance. The misstated, omitted and/or undisclosed information is necessary to permit shareholders to make an informed voting decision on the Issuance.

75. The Individual Defendants signed the Registration Statement, and jointly and severally, solicited and/or permitted use of their names in solicitations contained in the Registration Statement.

76. II-VI issued the Registration Statement.

77. By means of the Registration Statement, Defendants seek to secure Plaintiff's and other II-VI shareholders' approval of the Issuance, and solicit proxies from Plaintiff and other II-VI shareholders.

78. Plaintiff and the Class have suffered and will continue to suffer irreparable harm if the misleading and omitted information in the Registration Statement is not corrected sufficiently in advance of the Special Meeting to enable the Registration Statement to contain all material information.

## COUNT II

**Violation of Section 20(a) of the Exchange Act
Against the Individual Defendants**

79. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

17

80. The Individual Defendants acted as controlling persons of II-VI within the meaning of Section 20(a) of the 1934 Act, as alleged herein. By virtue of their positions as officers and/or directors of II-VI and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

81. Each of the Individual Defendants were provided with, or had unlimited access to, copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements and/or cause them to be corrected.

82. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

83. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

84. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and

proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 21, 2019                Respectfully submitted,

/s/ Alfred G. Yates, Jr.
**LAW OFFICE OF ALFRED G. YATES JR, PC**
Alfred G. Yates, Jr. (PA Bar No. 17419)
Gerald L. Rutledge (PA Bar No. 62027)
300 Mt. Lebanon Boulevard, Suite 206-B
Pittsburgh, PA 15234
Tel: (412) 391-5164, Fax (412) 471-1033
yateslaw@aol.com

**KASKELA LAW LLC**
D. Seamus Kaskela (PA Bar No. 204351)
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel: (888) 715–1740
skaskela@kaskelalaw.com

*Attorneys for Plaintiff*